UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
**Civil Division**

| | |
|---|---|
| **JANE DOE** ) <br> Connecticut ) <br> ) <br>    Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> **DE AMIGOS, LLC d/b/a Spot Lounge** ) <br> SERVE: ) <br>   Claudia Hines ) <br>   2903 Arizona Avenue, NW ) <br>   Washington, D.C. 20016 ) <br> ) <br>     And ) <br> ) <br> **MAZIN SALEH** ) <br> Washington, D.C. ) <br> ) <br> ) <br>   Defendants. ) <br> ) | **FILED** <br> SEP 3 0 2011 <br> Clerk, U.S. District & Bankruptcy <br> Courts for the District of Columbia <br><br> Civil Action No. <br><br> Case: 1:11-cv-01755 <br> Assigned To : Jackson, Amy Berman <br> Assign. Date : 9/30/2011 <br> Description: PI/Malpractice |

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW Plaintiff Jane Doe ("Plaintiff"), by counsel, and for her Complaint against

Defendants De Amigos, LLC ("De Amigos") and Mazin Saleh ("Mr. Saleh"), respectfully states as

follows:

### Nature of Case

This is a civil action for serious bodily and emotional injuries sustained by Plaintiff when

she was sexually assaulted by Mr. Saleh in his vehicle after she became heavily intoxicated at the

Spot Lounge DC ("Spot Lounge"), owned and operated by De Amigos in Washington, D.C. At

the time of the incident, Plaintiff was 18 years of age. De Amigos served alcoholic beverages to

Plaintiff even though she was underage and continued serving alcoholic beverages to her after she had become visibly intoxicated, both blatant violations of D.C. Code §§ 25-781 and 25-783. De Amigos was negligent and reckless in its conduct by serving alcohol to an underage person until and after the point of intoxication, until she was eventually not fully conscious. De Amigos' conduct led directly to (1) Plaintiff suffering from alcohol poisoning, and, (2) the circumstances in which Mr. Saleh, in his car just outside Spot Lounge, sexually assaulted Plaintiff. The negligent and tortious conduct of Mr. Saleh and De Amigos, together, proximately caused severe and permanent physical and emotional injuries to Plaintiff.

## Jurisdiction and Venue

1.      Jurisdiction in this matter is founded on diversity of citizenship and amount in controversy pursuant to 28 U.S.C. § 1332(a)(1).

2.      The matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and is between citizens of different states.

3.      Venue in this action properly lies in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391, insofar as a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## Parties

4.      Plaintiff Jane Doe is now, and at all relevant times has been, an adult resident of the State of Connecticut. At the time of the incident complained of herein, Plaintiff was 18 years old and a student at George Washington University.

5.      Upon information and belief, Mazin Saleh is now, and at all relevant times has been, an adult resident of the District of Columbia. At the time of the incident described herein, Mr. Saleh was a student at George Washington University.

6.      Upon information and belief, Defendant De Amigos, LLC is now, and at all relevant times has been, a Washington D.C. corporation with its principal office located at 1214 18th Street, NW, Washington D.C. 20036.  Upon information and belief, De Amigos, LLC is the owner of Spot Lounge DC, and is a retail alcoholic beverage licensee pursuant to the District of Columbia Alcoholic Beverage Control Act, holding license #81092.

### Factual Background

7.      On October 2, 2010, Plaintiff received an invitation through her Facebook account to attend a party being held at Spot Lounge that evening.

8.      Plaintiff arrived at Spot Lounge at approximately 12:15 a.m on October 3, 2010.

9.      When Plaintiff arrived at Spot Lounge, Spot Lounge security staff was monitoring the door.

10.      However, Spot Lounge staff allowed Plaintiff to enter the establishment without asking for any form of identification or attempting to ascertain Plaintiff's age.

11.      Upon information and belief, De Amgios did not require Spot Lounge staff members to check a patron's identification to purchase alcoholic beverages once inside Spot Lounge.

12.      Spot Lounge maintained a roped off area that customers reserved for private parties.

13.      The reserved section provided "bottle service," which is the sale of liquor by the bottle, including exclusive bartending or waitressing service.

14.      Upon entry, Plaintiff was directed to such a private party area within Spot Lounge, where she joined her two friends, who were already in attendance.

15.     A Spot Lounge bartender provided Plaintiff with a bottle of flavored vodka upon her arrival.  The table also was provided ice, juices, glasses, and shot glasses.

16.     Between 12:15 a.m. and 3 a.m., Spot Lounge served or provided many shots and "double-shots" of alcohol to Plaintiff.

17.     During this period, the establishment provided Plaintiff and the table with at least three bottles of vodka.

18.     During this period, Plaintiff was permitted to consume approximately eight shots of alcohol and became visibly intoxicated.

19.     Despite Plaintiff's visible intoxication, Spot Lounge employees continued to serve alcoholic beverages to her or permit her to consume them.

20.     Spot Lounge employees served alcoholic beverages to Plaintiff until she was so intoxicated that she eventually became incapacitated and not fully conscious.

21.     As a result of the alcoholic beverages served to Plaintiff throughout the night at Spot Lounge, Plaintiff became very ill and suffered from alcohol poisoning.

22.     Mr. Saleh, then a senior at George Washington University, was also in attendance at Spot Lounge on the night of the incident.

23.     Mr. Saleh took Plaintiff to his car to remove her from the vicinity of her friends, to isolate her, and to sexually assault her.

24.     Mr. Saleh had non-consensual sexual intercourse with Plaintiff while she was not fully conscious.

25.     Mr. Saleh then locked the Plaintiff in his car and rejoined the party inside Spot Lounge.

4

26.     At some point during or after the sexual assault, Plaintiff's friends attempted to locate her, finding Plaintiff not fully conscious in the backseat of Mr. Saleh's car.

27.     Plaintiff's friends knocked on car windows to attempt to rouse her.

28.     Plaintiff briefly woke, but, due to intoxication, could not coherently respond or exit the vehicle.

29.     Plaintiff's friends returned to Spot Lounge to locate Mr. Saleh.

30.     Upon information and belief, Plaintiff's friends overheard Mr. Saleh talking about having intercourse with "a girl," whom they assumed to be Plaintiff.

31.     Plaintiff's friends requested that Mr. Saleh bring Plaintiff and Plaintiff's friends back to the George Washington University campus.

32.     Plaintiff was informed and believes that Mr. Saleh used a condom during the sexual assault.

33.     Following Mr. Saleh's sexual assault, Plaintiff suffered severe physical and emotional trauma, resulting in permanent injuries.

34.     Upon information and belief, Mr. Saleh drove Plaintiff and Plaintiff's friends in his vehicle back to a residence hall at George Washington University.

35.     Outside of a residence hall at the George Washington University campus, Plaintiff's friends attempted to rouse and sober her.

36.     At that time, George Washington University Police officers walked by the residence hall, and Plaintiff's friends filed a complaint with the officers regarding the sexual assault.

37.     The George Washington University Police officers called for paramedics, and an ambulance took Plaintiff to the Washington Hospital Center for examination and overnight evaluation.

38.     The police arrived at the hospital during the morning to interview Plaintiff.

39.     During this interview, Plaintiff was overwhelmed and traumatized as she explained the facts surrounding the sexual assault.

40.     Plaintiff checked herself out of the hospital, but soon returned to the hospital to see a Sexual Assault Nurse Examiner and have a sexual assault examination.

41.     Plaintiff was tested for pregnancy, HIV, Gonorrhea, Syphilis, and other sexually transmitted diseases.

42.     The nurse examiner performed a medical and forensic examination, and collected evidence of the sexual assault.

43.     Plaintiff was prescribed Combivir and Kaletra for HIV prevention, Cefuroxime for Gonorrhea, Azithromycin for Chlamydia, and Phenergan for nausea caused by the medications.

44.     Plaintiff was discharged from the hospital on October 3, 2010, and was advised to follow up with her primary care physician.

45.     Plaintiff later followed up with physicians specializing in gynecology and mental health professionals for additional examinations and help dealing with the trauma.

46.     Plaintiff continues to attend counseling sessions in order to deal with the devastating emotional consequences of the sexual assault.

47.     Since the incident, Plaintiff has suffered from generalized depression and anxiety, feelings of insecurity and vulnerability, recurring nightmares and flashbacks, a desire to avoid people and social situations, and obsessive thoughts concerning the incident.

48.     Upon information and belief, Mr. Saleh was disciplined and expelled from George Washington University, an institution both he and Plaintiff attended, for the above-described incident.

49.     De Amgios is a retail alcoholic beverage licensee pursuant to the District of Columbia Alcoholic Beverage Control Act, holding license #81092.

50.     In 2011, De Amigos was called before the before the D.C. Alcoholic Beverage Control Board ("ABC Board") for precisely the same type of conduct which is alleged in Plaintiff's Complaint:  for selling alcohol to a minor, permitting the sale of alcohol to an intoxicated person, and permitting the sale of alcohol without taking reasonable steps to determine a patron's legal drinking age status.  *See* ABC Board Case No. 11-251-00062.

51.     On July 27, 2011, De Amigos settled the case with the ABC Board.  Because De Amigos violated D.C. Code §§ 25-781 and 25-783 by selling alcohol to underage and intoxicated persons, De Amigos paid a fine of $12,000 and had its liquor license suspended for 10 days during August 2011. *Id.* Five days were stayed, but 10 days total were served because the new violations occurred within one year of De Amigos' settlement in a previous case, Case No. 09-251-00253 (security plan violations and permitting disorderly and unlawful conduct).

7

## *COUNT I*
### (Battery – Mr. Saleh)

52.     Paragraphs 1 – 51 above are hereby incorporated by reference as if set forth fully herein.

53.     Mr. Saleh unlawfully and intentionally touched and used force on Plaintiff in a harmful, offensive, and insulting way.  To wit, Mr. Saleh intentionally sexually assaulted Plaintiff by engaging in sexual acts and touching while Plaintiff was not fully conscious.

54.     Mr. Saleh engaged in or caused Plaintiff to engage in or submit to a sexual act while Plaintiff was (1) incapable of appraising the nature of the conduct, (2) incapable of declining participation in the sexual act, and (3) incapable of communicating her unwillingness to engage in the sexual act.   Plaintiff therefore could not have consented to Mr. Saleh's sexual acts or touching.

55.     As a direct and proximate result of Mr. Saleh's battery, Plaintiff experienced, and will continue to experience pain and suffering, physical injuries, and severe emotional distress; was prevented from pursuing her usual routine activities; suffered humiliation and embarrassment; and was caused economic damages including, but not limited to, expenses for hospital care, additional medical care, and counseling, as well as expenses for future medical care, and counseling.

56.     Mr. Saleh acted with evil motive, actual malice, deliberate violence or oppression, or with intent to injure, or in willful disregard for the rights of the plaintiff; and his conduct was outrageous, grossly fraudulent, or reckless toward the safety of the plaintiff

57.     Because his conduct reflects reckless and willful disregard for Plaintiff's rights and safety, Mr. Saleh is liable for punitive damages in an amount of $10,000,000.00.

8

WHEREFORE, Plaintiff demands judgment against Mr. Saleh as follows: (1) for compensatory damages in the amount of $2,000,000.00, which amount shall be proven at trial; (2) for punitive damages in the amount of $10,000,000.00; (3) for costs and expenses associated with this suit; and (4) for such other and further relief as this Court deems appropriate.

### *COUNT II*
**(Intentional Infliction of Emotional Distress – Mr. Saleh)**

58.     Paragraphs 1 – 57 above are hereby incorporated by reference as if set forth fully herein.

59.     Mr. Saleh's sexual assault of Plaintiff constitutes extreme and outrageous conduct, and his actions were intentional and/or reckless.  To wit, Mr. Saleh intentionally sexually assaulted Plaintiff while she was not fully conscious.  Mr. Saleh brought her to his car for the purpose of sexually assaulting her and did sexually assault her while she was (1) incapable of appraising the nature of the conduct, (2) incapable of declining participation in the sexual act, and (3) incapable communicating her unwillingness to engage in the sexual act.

60.     Mr. Saleh's sexual assault of Plaintiff goes beyond all possible bounds of decency, and is regarded as atrocious and utterly intolerable in a civilized community.

61.     Plaintiff has suffered and will continue to suffer severe emotional distress as a result of Mr. Saleh's conduct.

62.     As a direct and proximate result of Mr. Saleh's intentional infliction of emotional distress, Plaintiff experienced, and will continue to experience, pain and suffering, physical injuries, and severe emotional distress; was prevented from pursuing her usual routine activities; suffered humiliation and embarrassment; and was caused economic damages including, but not limited to, expenses for hospital care, additional medical care, and counseling, as well as expenses for future medical care, and counseling.

9

63.     Mr. Saleh acted with evil motive, actual malice, deliberate violence or oppression, or with intent to injure, or in willful disregard for the rights of the plaintiff; and his conduct was outrageous, grossly fraudulent, or reckless toward the safety of the plaintiff

64.     Because his conduct reflects reckless and willful disregard for Plaintiff's rights and safety, Mr. Saleh is liable for punitive damages in an amount of $10,000,000.00.

WHEREFORE, Plaintiff demands judgment against Mr. Saleh as follows: (1) for compensatory damages in the amount of $2,000,000.00, which amount shall be proven at trial; (2) for punitive damages in the amount of $10,000,000.00; (3) for costs and expenses associated with this suit; and (4) for such other and further relief as this Court deems appropriate.

### *COUNT III*
### (Reckless and Willful Disregard – Mr. Saleh)

65.     Paragraphs 1 – 64 are hereby incorporated by reference as if fully set forth herein.

66.     Mr. Saleh acted with evil motive, actual malice, deliberate violence or oppression, or with intent to injure, or in willful disregard for the rights of the plaintiff; and his conduct was outrageous, grossly fraudulent, or reckless toward the safety of the plaintiff

67.     Mr. Saleh acted recklessly and with willful disregard for the rights and safety of Plaintiff when he sexually assaulted her while she was not fully conscious, leaving her in the back of his car.

68.     Mr. Saleh knew, or in the exercise of reasonable care should have known, that his sexual assault and unconsented touching of Plaintiff constituted a serious danger to Plaintiff's physical and mental wellbeing.

69.     Mr. Saleh's breach of his duty directly caused Plaintiff to suffer injury.

70.     As a direct and proximate result of Mr. Saleh's reckless and willful disregard of Plaintiff's rights and safety, Plaintiff experienced, and will continue to experience, pain and

suffering, physical injuries, and severe emotional distress; was prevented from pursuing her usual routine activities; suffered humiliation and embarrassment; and was caused economic damages including, but not limited to, expenses for hospital care, additional medical care, and counseling, as well as expenses for future medical care, and counseling.

71.      Because his conduct reflects reckless and willful disregard for Plaintiff's rights and safety, Mr. Saleh is liable for punitive damages in an amount of $10,000,000.00.

WHEREFORE, Plaintiff demands judgment against Mr. Saleh as follows: (1) for compensatory damages in the amount of $2,000,000.00, which amount shall be proven at trial; (2) for punitive damages in the amount of $10,000,000.00; (3) for costs and expenses associated with this suit; and (4) for such other and further relief as this Court deems appropriate.

## COUNT IV
### (Negligence – De Amigos)

72.      Paragraphs 1 – 71 above are hereby incorporated by reference as if set forth fully herein.

73.      De Amigos owed Plaintiff a duty to use reasonable care in, *inter alia*, checking identification and age of patrons to whom alcohol will be served, refusing to sell or provide alcoholic beverages to those not of legal age, and ceasing to serve visibly intoxicated persons.

74.      De Amigos' status as a tavern-keeper imposes upon it these specific duties.

75.      De Amigos owed these duties to persons under 21 and to persons who have become visibly intoxicated to prevent both classes of people from being harmed.

76.      In violation of these duties, De Amigos sold, gave, served, delivered, or dispensed alcoholic beverages to Plaintiff on the night of the incident described in this Complaint.

77.      De Amigos permitted Plaintiff to consume alcoholic beverages on the licensed premises.

11

78.     Plaintiff was under 21 years of age on the night of the incident.

79.     De Amigos did not at any time request valid identification or any other documentation from Plaintiff regarding her age.

80.     De Amigos did not make any attempt whatsoever to determine whether Plaintiff was of the legal drinking age prior to providing her with alcoholic beverages.

81.     Plaintiff became visibly intoxicated during the night of the incident.

82.     De Amigos sold, delivered, or permitted Plaintiff to consume alcoholic beverages to Plaintiff after she became visibly intoxicated.

83.     As a result of the alcoholic beverages served to Plaintiff at Spot Lounge, Plaintiff became very ill and suffered from alcohol poisoning.

84.     The sexual assault described above was directly and proximately caused by the negligence of De Amigos and its failure to use reasonable care by failing to check Plaintiff's identification or ascertain her age, by selling or providing alcoholic beverages to Plaintiff despite the fact that she was only 18 years of age, and by serving alcoholic beverages to Plaintiff even after she had become visibly intoxicated.

85.     De Amigos' negligent acts and omissions led directly to Plaintiff becoming so intoxicated that she was not fully conscious, during which time Mr. Saleh was able to commit the sexual assault described above.

86.     But for De Amigos' negligent acts or omissions, Plaintiff would not have been sexually assaulted by Mr. Saleh.

87.     As a direct and proximate result of De Amigos's negligent acts and omissions, Plaintiff experienced, and will continue to experience, pain and suffering, physical injuries, and severe emotional distress; was prevented from pursuing her usual routine activities; suffered

humiliation and embarrassment; and was caused economic damages including, but not limited to, expenses for hospital care, additional medical care, and counseling, as well as expenses for future medical care, and counseling.

WHEREFORE, Plaintiff demands judgment against De Amigos as follows: (1) for compensatory damages in the amount of $2,000,000.00, which amount shall be proven at trial; (2) for costs and expenses associated with this suit; and (3) for such other and further relief as this Court deems appropriate.

### *COUNT V*
**(Negligence *Per Se* – De Amigos)**

88.     Paragraphs 1 – 87 above are hereby incorporated by reference as if set forth fully herein.

89.     De Amigos owed Plaintiff a duty to use reasonable care in, *inter alia*, checking identification and age of patrons to whom alcohol will be served, refusing to sell or provide alcoholic beverages to those not of legal age, and ceasing to serve visibly intoxicated persons.

90.     De Amigos' status as a tavern-keeper imposes upon it these specific duties.

91.     At the time the incident occurred, D.C. § 25-781 and 25-783 (2010) were in effect in the District of Columbia.

92.     D.C. Code § 25-781(a) prohibits the sale or delivery of alcoholic beverages to persons under 21 years of age or intoxicated persons.

93.     D.C. Code § 25-781(b) prohibits retail licensees from permitting the consumption of alcoholic beverages by persons under 21 years of age or intoxicated persons.

94.     D.C. Code § 25-781(c) prohibits anyone from giving, serving, delivering, or in any manner dispensing an alcoholic beverage to a person under 21 years of age.

95.     D.C. Code § 25-781 applies to De Amigos as a retail licensee and the owner and operator of Spot Lounge.

96.     Further, D.C. Code § 25-783(a) mandates that retail licensees refuse to sell or deliver alcoholic beverages to an person who, upon request, fails to produce valid identification.

97.     D.C. Code § 25-783(a) mandates that retail licensees take reasonable steps to ascertain the legal drinking age status of all patrons.

98.     D.C. Code §§ 25-781 and 25-783 are designed to promote safety, including the safety of persons under 21 years of age and persons who have become intoxicated.

99.     Plaintiff was at all relevant times a member of the class and/or classes intended to be protected by D.C. Code § 25-781 and 25-783.

100.    De Amigos is an entity upon which specific duties, as described above, are imposed by D.C. Code §§ 25-781 and 25-783.

101.    De Amigos sold, gave, served, delivered, or dispensed alcoholic beverages to Plaintiff on the night of the incident described in this Complaint.

102.    De Amigos permitted Plaintiff to consume alcoholic beverages on the licensed premises.

103.    Plaintiff was under 21 years of age on the night of the incident.

104.    Plaintiff became visibly intoxicated during the night of the incident.

105.    De Amigos sold or delivered alcoholic beverages to Plaintiff after she became visibly intoxicated.

106.    De Amigos permitted Plaintiff to consume alcoholic beverages after she had become visibly intoxicated.

107.    De Amigos did not request valid identification or any other documentation from Plaintiff.

108.    De Amigos did not make any attempt whatsoever to determine whether Plaintiff was of the legal drinking age prior to providing her with alcoholic beverages.

109.    By serving Plaintiff alcoholic beverages while she was under 21 years of age and/or without checking her identification to ascertain her age, De Amigos violated D.C. Code § 25-781.

110.    By serving Plaintiff alcoholic beverages even after she had become visibly intoxicated, De Amigos violated D.C. Code § 25-783.

111.    De Amigos' violations of D.C. Code § 25-781 or § 25-783 constituted negligence *per se*.

112.    As demonstrated by ABC Board Case No. 11-251-00062, in which De Amigos paid a fine and had its liquor license suspended for selling alcohol to minors and intoxicated persons, De Amigos has demonstrated a pattern of negligent and reckless conduct towards underage and intoxicated patrons.

113.    As a result of the alcoholic beverages served to Plaintiff at Spot Lounge, Plaintiff became very ill and suffered from alcohol poisoning.

114.    But for De Amigos' negligent acts or omissions, Plaintiff would not have been sexually assaulted by Mr. Saleh.

115.    By violating D.C. Code § 25-781 or § 25-783, De Amigos is liable for all of the damages Plaintiff suffered as a result of those violations.

116.    Plaintiff's physical and emotional injuries are a direct result of De Amigos' failure to comply with the D.C. Code §§ 25-781 and 25-783. Moreover, the harms Plaintiff suffered directly result from the risks that the statute was designed to protect against.

117.    As a direct and proximate result of De Amigos' violations of D.C. Code §§ 25-781 and 25-783, Plaintiff experienced, and will continue to experience, pain and suffering, physical injuries, and severe emotional distress; was prevented from pursuing her usual routine activities; suffered humiliation and embarrassment; and was caused economic damages including, but not limited to, expenses for hospital care, additional medical care, and counseling, as well as expenses for future medical care, and counseling.

WHEREFORE, Plaintiff demands judgment against De Amigos as follows: (1) for compensatory damages in the amount of $2,000,000.00, which amount shall be proven at trial; (2) for costs and expenses associated with this suit; and (3) for such other and further relief as this Court deems appropriate.

### COUNT VI
**(Reckless and Willful Disregard – De Amigos LLC)**

118.    Paragraphs 1 – 117 are incorporated by reference as though fully set forth herein.

119.    This Count is brought against De Amigos.

120.    De Amigos acted recklessly and with willful disregard for the rights and safety of Plaintiff in failing to check her identification, providing or selling alcohol to her at age 18, and continuing to serve alcohol to her when she was visibly intoxicated.

121.    As a tavern-keeper, De Amigos owed special duties to members of certain classes of people to protect them from harm.

16

122.    The Plaintiff was at all relevant times a person in a class that De Amigos owed special duties to protect, specifically someone under the age of 21 and who had become visibly intoxicated.

123.    De Amigos' outrageously and/or recklessly breached its duty to Plaintiff.

124.    De Amigos' conduct was outrageous and/or reckless toward Plaintiff's rights and safety, when De Amigos or its agents, *inter alia*, did not even attempt to ascertain Plaintiff's age before serving or providing alcohol to her and willfully continued to serve alcohol to her even after she became visibly intoxicated.

125.    The officers, directors, and managing agents participated in, authorized, or approved of the above-described acts; alternatively, the officers, directors, and managing agents were so reckless and/or grossly negligent in their management of Spot Lounge employees that they willfully disregarded their duties to Plaintiff.

126.    As demonstrated by ABC Board Case No. 11-251-00062, in which De Amigos paid a fine and had its liquor license suspended for selling alcohol to minors and intoxicated persons, De Amigos has demonstrated a pattern of negligent and reckless conduct towards underage and intoxicated patrons.

127.    As a result of the alcoholic beverages served to Plaintiff at Spot Lounge, Plaintiff became very ill and suffered from alcohol poisoning.

128.    But for De Amigos' reckless and willful acts or omissions, Plaintiff would not have been sexually assaulted by Mr. Saleh.

129.    As a direct and proximate result of De Amigos' reckless and willful disregard for its duties and Plaintiff's rights, Plaintiff experienced, and will continue to experience, pain and suffering, physical injuries, and severe emotional distress; was prevented from pursuing her

17

usual routine activities: suffered humiliation and embarrassment; and was caused economic damages including. but not limited to, expenses for hospital care, additional medical care, and counseling, as well as expenses for future medical care, and counseling.

130.    Because De Amigos' conduct reflects reckless and willful disregard for Plaintiff's rights and safety, committed by an officer of the corporation. De Amigos is liable for punitive damages in an amount of $10,000,000.00.

WHEREFORE. Plaintiff demands judgment against De Amigos as follows: (1) for compensatory damages in the amount of $2,000,000.00, which amount shall be proven at trial; (2) for punitive damages in the amount of $10,000,000.00; (3) for costs and expenses associated with this suit; and (4) for such other and further relief as this Court deems appropriate.

### **Jury Trial Requested**

Plaintiff, by counsel, respectfully requests a trial by jury on all issues.


Respectfully submitted,

JANE DOE


By_____
Peter C. Grenier, Esquire (DC Bar # 418570)
Jacob M. Lebowitz, Esquire (DC Bar # 483742)
Ryan C. Posey, Esquire (DC Bar # 1000581)
BODE & GRENIER, L.L.P.
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, D.C. 20036
(202) 828-4100 (telephone)
(202) 828-4130 (facsimile)
*Counsel for Plaintiff*


Dated:  September 29, 2011